UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NEW JERSEY MANUFACTURERS INSURANCE GROUP A/S/O WENDY WEINTRAUB, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**DAIHATSU INDUSTRIA E COMERCIO DE MOVEIS E APARELHOS ELECTRICOS LTDA. d/b/a TAIFF, et al.,**<br><br>Defendants. | **Civil Action No. 2:18-cv-09038-KM-CLW**<br><br>**OPINION** |

## I. Introduction

This matter comes before the Court on the motions of plaintiffs New Jersey Manufacturers Insurance Group a/s/o Wendy Weintraub ("NJM") and Wendy Weintraub ("Weintraub")[1] (collectively, "Plaintiffs") seeking leave to file third and first amended complaints, respectively [ECF No. 75, 89]. Defendants Action Technology Indústria e Comércio de Eletroelectrônicos Ltda. f/k/a Daihatsu Indústria e Comércio de Móveis e Aparelhos Elétricos Ltda. (s/h/a Daihatsu Indústria e Comércio de Móveis e Aparelhos Elétricos Ltda. d/b/a TAIFF) ("Daihatsu") and Amazon.com, Inc. ("Amazon") have opposed the motions and Plaintiffs have filed replies. ECF No. 90-93. The motion has been referred to the undersigned by the Honorable Kevin McNulty. The Court has carefully considered the parties' submissions and decides the matter without oral

---

[1] Weintraub is the plaintiff in Civil Action No. 2:19-cv-19953 (KM)(CLW), which has been consolidated with the instant matter for purposes of case management and pretrial discovery. ECF No. 46.

argument per Local Civil Rule 78.1. For the reasons stated below, the Court DENIES Plaintiffs' motions.

## II. Background

As alleged by Plaintiffs, in January 2018 a hair dryer manufactured by Daihatsu caused a fire at Weintraub's home. Weintraub had purchased the hair dryer in March 2016 from defendants Amazon and New Conception Import & Export Corporation ("New Conception"). Weintraub submitted a property damage claim to NJM on which NJM paid more than $850,000. NJM, as subrogee of Weintraub, seeks to recover this sum and Weintraub seeks to recover for personal injuries and other expenses caused by the fire. See Second Amended Complaint [ECF No. 15] at ¶¶ 7-19; Weintraub Complaint [Civil Action No. 2:19-cv-19953, ECF No. 1] at ¶¶ 7-17. Shortly after filing, NJM twice amended its complaint. ECF No. 6, 15. Daihatsu then brought a motion to dismiss for lack of personal jurisdiction, which was administratively terminated pending resolution of NJM's instant motion. ECF No. 62, 78.[2]

## III. Legal Standard

Under Rule 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The "three instances when a court typically may exercise its discretion to deny a Rule 15(a) motion for leave to amend [are] when '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co., 839 F.3d 242, 249 (3d Cir. 2016) (quoting U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P., 769 F.3d 837, 849 (3d Cir. 2014)). "A court denies a motion to amend on futility grounds if the complaint, as

---

[2] Daihatsu's motion also sought to set aside the default that was entered as to it. ECF No. 62.

amended, would fail to state a claim upon which relief could be granted. We assess futility with the same standard of legal sufficiency as applies under Rule 12(b)(6)." Woodend v. Lenape Reg'l High Sch. Dist., 535 F. App'x 164, 168 (3d Cir. 2013) (citations and quotation marks omitted).[3] To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (quotation marks omitted)). In conducting this analysis, a court must "accept as true all of the factual allegations, as well as all reasonable inferences, reasonably drawn from the complaint, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (citing cases).

## IV. Analysis

### a. Personal Jurisdiction

#### i. Plaintiffs' Motions

In moving to dismiss, Daihatsu argued that Plaintiffs failed to establish this Court's personal jurisdiction over it. Plaintiffs now seek to amend their complaints to add allegations supporting the Court's specific jurisdiction over Daihatsu.

As recently explained by the Supreme Court,

> [s]pecific jurisdiction . . . covers defendants less intimately connected with a State [than general jurisdiction], but only as to a

---

[3] While Plaintiffs' motion concerns personal jurisdiction and therefore invokes Rule 12(b)(2) (as opposed to Rule 12(b)(6)), the above-stated futility standard nonetheless applies. See, e.g., Satellite Fin. Planning Corp. v. First Nat'l Bank, 1987 U.S. Dist. LEXIS 989, at *7 (D. Del. Feb. 5, 1987) ("If the Court lacked jurisdiction, joining Security as a party would be futile because the Court would dismiss Security as a party soon after they were joined. . . . If the Court lacks jurisdiction over Security, then First National should not be able to amend the counterclaim to join Security.").

3

> narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." The defendant, we have said, must take some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State. The contacts must be the defendant's own choice and not random, isolated, or fortuitous. They must show that the defendant deliberately reached out beyond its home—by, for example, exploi[ting] a market in the forum State or entering a contractual relationship centered there. Yet even then—because the defendant is not "at home"—the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, must arise out of or relate to the defendant's contacts with the forum. Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.

Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 141 S. Ct. 1017, 1024-25 (2021) (citations and quotation marks omitted).

While Plaintiffs bear the initial burden of demonstrating personal jurisdiction, "where, as here, the factual record contains only pleadings and affidavits, this burden involves merely establishing a prima facie case that personal jurisdiction exists over each defendant." Premier Trailer Leasing, Inc. v. Transfer, 2013 U.S. Dist. LEXIS 88654, at *3 (D.N.J. June 24, 2013) (citing Fiscus v. Combus Finance AG, 2006 U.S. Dist. LEXIS 41016, at *10 (D.N.J. June 20, 2006)). "In deciding a motion to dismiss for lack of personal jurisdiction, we take the allegations of the complaint as true. But once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996) (citation omitted).[4] It follows that

---

[4] Although the Court is considering motions to amend (as opposed to dismissal motions), it will apply the above-stated framework, as these motions trigger Rule 12's futility standard, involve challenges to the Court's jurisdiction over Daihatsu, and were filed in response to Daihatsu's motion to dismiss on personal jurisdiction grounds.

"[w]hen personal jurisdiction is challenged, . . . Plaintiff cannot rest on the allegations of the complaint alone." Flanagan v. Shively, 783 F. Supp. 922, 936 (M.D. Pa. 1992).

As Daihatsu is a Brazilian company with no apparent connection to New Jersey, see Proposed Third Amended Complaint (the "PTAC") at ¶ 3; Proposed Amended Weintraub Complaint at (the "Weintraub PAC") at ¶ 3, Plaintiffs' theory of jurisdiction over Daihatsu is somewhat indirect: they allege (upon information and belief) that non-party TAIFF USA Corp. ("TAIFF USA") is a "subsidiary and/or corporate relative of Daihatsu" and that the parties share common ownership. And, the argument goes, since TAIFF USA has connections with New Jersey sufficient to support the exercise of this Court's jurisdiction, so too, by extension, does Daihatsu. See PTAC at ¶¶ 13-22; Weintraub PAC at ¶¶ 13-22. This theory requires two findings: that TAIFF USA has the requisite connections with New Jersey, and that Daihatsu and TAIFF USA are sufficiently related such that these connections can be imputed onto Daihatsu.

In opposition, Daihatsu submits the declarations of Yujiro Kenmochi, a technical advisor at Daihatsu's successor in interest (the "Kenmochi Decl.") and Roberto Jun Ikesaki, an indirect owner of Daihatsu's successor in interest, member of Daihatsu when it merged with the successor, and former indirect owner of TAIFF USA (the "Ikesaki Decl."). Kenmochi first confirms that "Daihatsu has never had any connection with the State of New Jersey." He goes on to rebut one of the two pillars upon which Plaintiffs' jurisdictional argument is based — the purported connection between Daihatsu and TAIFF USA. Kenmochi states that Daihatsu never owned or controlled TAIFF USA, that the only connection between the two was that one of Daihatsu's owners was the indirect owner of TAIFF USA, and that Daihatsu's only interactions with TAIFF USA were the sales of its products to TAIFF USA, the last of which occurred in April 2014. Kenmochi Decl. at ¶¶ 5-11. Ikesaki addresses the other of Plaintiffs' required findings (TAIFF USA's connection with

5

New Jersey). He concedes that TAIFF USA was incorporated in New Jersey, but states that TAIFF USA never directed sales to distributors in New Jersey specifically, never created a market for selling TAIFF USA products within New Jersey, and never sold directly to any customers in the United States. He also confirms that TAIFF USA shut down its New Jersey operations and moved to Florida in 2013, ceased operations in October 2015, and was formally dissolved in April 2016. See Ikesaki Decl. at ¶¶ 3-8.

On reply, NJM[5] does not submit "affidavits or other competent evidence [demonstrating] that jurisdiction is proper." Dayhoff, supra. Instead, it largely rehashes the allegations in the PTAC, which as noted, a plaintiff may not do once jurisdiction has been challenged. Flanagan, supra. NJM also posits that Daihatsu's declarations "contain significant admissions" that demonstrate that Daihatsu directly (as opposed to as a relative of TAIFF USA) purposefully availed itself of the privileges of conducting business in New Jersey: by stating that it sold products to TAIFF USA, a New Jersey-based distributor, Daihatsu has conceded that it "engaged in activities in New Jersey that reveal an intent to invoke or benefit from the protection of its laws." ECF No. 93 at 9. This argument fails as a matter of law, since it is settled that "[t]he bare fact that [a non-resident defendant] contracted with a [resident] distributor is not enough to establish personal jurisdiction in the State." Bristol-Myers Squibb Co. v. Superior Court, 137 S. Ct. 1773, 1783 (2017)). Moreover, under this theory Plaintiffs' claims cannot be said to "arise out of or relate to [Daihatsu's] contacts with the forum", Ford, supra, since the hair dryer at issue was purchased approximately two years after Daihatsu last sold to TAIFF USA.

Returning, then, to the jurisdiction by-way-of-TAIFF USA theory espoused in the PTAC and Weintraub PAC, it is plain that TAIFF USA's connections with New Jersey cannot be ascribed

---

[5] Weintraub does not argue on reply as to this issue.

6

to Daihatsu. In view of the Kenmochi Decl., the only discernible overlap between TAIFF USA and Daihatsu is some degree of common ownership, which is insufficient to impute TAIFF USA's contacts with New Jersey onto Daihatsu. See, e.g., HSM Holdings, LLC v. Mantu I.M. Mobile Ltd., 2021 U.S. Dist. LEXIS 45110, at *30 (S.D.N.Y. Mar. 10, 2021) ("Shared ownership . . . is insufficient basis for this Court to exercise personal jurisdiction under the alter ego theory.") (citing Cardell Fin. Corp. v. Suchodolski Assocs., 2012 U.S. Dist. LEXIS 188295, at *87 (S.D.N.Y. July 17, 2012)); MMI, Inc. v. Baja, Inc., 743 F. Supp. 2d 1101, 1111 (D. Ariz. 2010) (evidence of shared ownership insufficient to impute contacts for jurisdictional purposes). This conclusion renders irrelevant the question of TAIFF USA's contacts with New Jersey, as those contacts do not bear upon Daihatsu's connection with the state.[6]

Finally, Daihatsu's declarations also refute the proposed allegations that Daihatsu bears the requisite contacts with New Jersey by virtue of performing "after-sales service" to customers in the state, and that Daihatsu is connected to New Jersey through New Conception. See Kenmochi Decl. at ¶ 12; Ikesaki Decl. at ¶¶ 10-13. As above, Plaintiffs fail to respond to these statements with competent evidence.

---

[6] The Court briefly notes that, even assuming that TAIFF USA and Daihatsu were sufficiently interrelated, any connections between TAIFF USA and New Jersey ceased in 2013 when TAIFF USA shuttered its New Jersey operations. Ikesaki Decl. at ¶ 4. As above, being that Weintraub alleges she purchased the hair dryer in March 2016, Weintraub Complaint at ¶ 3, Plaintiffs' claims do not "arise out of or relate to the defendant's contacts with the forum", Ford, supra, since those contacts ceased to exist roughly three years prior. Cf., e.g., Potts v. Dyncorp Int'l, LLC, 465 F. Supp. 2d 1254, 1259-60 (M.D. Ala. 2006) ("Although McCants, at one time, had extensive contacts with Alabama, by maintaining his domicile here, those contacts ceased upon the changing of his domicile to Georgia. . . ."). Of note, the fact that TAIFF USA was incorporated in New Jersey could support a finding of general jurisdiction, since "[a] place of incorporation . . . is the paradigm for general jurisdiction for corporations." Femino-Ducey-Queler Orthopedic Grp. v. Blue Cross Blue Shield of Minn., 2020 U.S. Dist. LEXIS 241557, at *13 (D.N.J. Dec. 23, 2020) (citing Daimler AG v. Bauman, 571 U.S. 117, 137 (2014)). However, in addition to the fact that Plaintiffs do not forward a theory of general jurisdiction, for the reasons discussed, a finding of general jurisdiction over TAIFF USA does nothing to establish this Court's jurisdiction over Daihatsu.

As Plaintiffs' proposed jurisdictional allegations fail to make a prima facie showing that personal jurisdiction exists over Daihatsu, their motions to add these allegations fail as futile.

### ii. Jurisdictional Discovery

On reply, NJM asks that it be permitted to engage in limited jurisdictional discovery. The Third Circuit has explained that

> [j]urisdictional discovery is not available merely because the plaintiff requests it. If the plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained. A plaintiff may not, however, undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery.

Malik v. Cabot Oil & Gas Corp., 710 F. App'x 561, 565 (3d Cir. 2017) (citations and quotation marks omitted).

Setting aside that they do not request this relief in their motion papers, Plaintiffs do not meet this burden. As discussed, the primary theory of jurisdiction forwarded in the proposed complaints is a reach in the first instance — requiring a roundabout finding of jurisdiction through a non-party — and more importantly, is soundly refuted by evidence submitted by Daihatsu, to which Plaintiffs do not even attempt to meaningfully respond. Plaintiffs' secondary theories (a finding of jurisdiction through New Conception, Daihatsu's purported after-service sales, and purported concessions made in Daihatsu's declarations) fare no better. If reasonable particularity is the hook upon which additional jurisdictional facts may be hung, Plaintiffs' arguments come unhinged at the slightest pressure. This case is far different from, for example, Int'l Playthings LLC v. Toy Teck Ltd., LLC, 2013 U.S. Dist. LEXIS 186779 (D.N.J. July 23, 2013) (McNulty, J.), where jurisdictional discovery was ordered because "[t]he gaps in [plaintiffs'] pleadings may well reflect nothing more than the [defendant] entities' opaque corporate arrangements", id. at *16; or

8

Rickman v. BMW of N. Am. LLC, 2021 U.S. Dist. LEXIS 90403 (D.N.J. May 11, 2021) (McNulty, J.), where "[b]oth sides offer[ed] evidence on the personal jurisdiction issue", id. at *25 (quoting Murphy v. Eisai, Inc., 503 F. Supp. 3d 207, 214 (D.N.J. 2020)), likewise warranting limited jurisdictional discovery. The present facts more squarely align with Mitzi Int'l Handbags & Accessories, Ltd. v. All. Sales & Distribution, Inc., 2012 U.S. Dist. LEXIS 195396 (D.N.J. Feb. 10, 2012), where the court wrote that

> Plaintiff has provided no evidence that Alliance potentially has any contacts with New Jersey sufficient for either specific or general jurisdiction. Additionally, Alliance has specifically refuted that it has any additional contact with New Jersey in an Affidavit. Accordingly, any discovery would, in fact, consist of a fishing expedition, and Plaintiff has given this Court no reason to conclude the pond might be stocked.

Id. at *20 (quotation marks omitted). Finally, the fact that this case has been pending since 2018, with substantial discovery having been conducted, further militates against the notion that additional discovery would salvage Plaintiffs' jurisdictional allegations. See, e.g., Kearney v. Bayerische Motoren Werke Aktiengesellschaft, 2021 U.S. Dist. LEXIS 62356, at *16 (D.N.J. Mar. 31, 2021) (denying request for jurisdictional discovery in part because discovery had been underway for over two years).

The Court therefore denies Plaintiffs' belated request to conduct jurisdictional discovery.

### b. Breach of Contract Claim Against Amazon

Plaintiffs also move to add a third-party beneficiary breach of contract claim. This proposed claim is based on a Business Solutions Agreement between Amazon and New Conception (the "BSA"), which provides that upon exceeding a certain sales threshold, New Conception is required to obtain insurance naming Amazon as an additional insured. Plaintiffs seek to allege that despite meeting this threshold, New Conception failed to obtain this insurance,

9

and more directly relevant, that Amazon did not enforce New Conception's compliance with this provision. See PTAC at ¶¶ 63-71; Weintraub PAC at ¶¶ 58-66. Amazon opposes the requested amendment on the ground that it cannot be liable for breaching the BSA because the BSA does not require anything from Amazon.

Amazon is correct on this count. The applicable portion of the BSA provides:

> If the gross proceeds from Your[7] Transactions exceed the applicable Insurance Threshold during each month over any period of three (3) consecutive months, or otherwise if requested by us, then within thirty (30) days thereafter, **you will maintain** at your expense throughout the remainder of the Term for each applicable Elected Country commercial general, umbrella or excess liability insurance with the Insurance Limits per occurrence and in aggregate covering liabilities caused by or occurring in conjunction with the operation of your business, including products, products/completed operations and bodily injury, with policy(ies) naming Amazon and its assignees as additional insureds. At our request, **you will provide** to us certificates of insurance for the coverage to the following address: c/o Amazon, P.O. Box 81226, Seattle, WA 98108-1226, Attention: Risk Management.

See ECF No. 75-1, Exhibit B (emphases added). As Amazon correctly notes, the BSA requires action by New Conception, not by Amazon; nothing in the applicable portion of the agreement requires Amazon to do anything. It is a bedrock principle of contract law that to be liable on a contract, a party must breach a promise to act. See, e.g., Mid-American Salt, LLC v. Morris County Coop. Pricing Council, 964 F.3d 218, 226 (3d Cir. 2020) (breach of contract entails a "failure of the defendant to perform its obligations under the contract"); Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 512 (2019) (breach of contract means that "the defendant did not do what the contract required [the defendant] to do") (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016)).

---

[7] In the BSA, "you" refers to New Conception; "us" refers to Amazon.

This case is on all fours with Sullivan v. United States, 625 F.3d 1378 (Fed. Cir. 2010), where the United States Postal Service entered an agreement with a trucking company ("TNT") whereby TNT was required to obtain certain insurance coverage. After TNT failed to do so and an accident occurred, the plaintiffs sued the Government on a third-party beneficiary theory, claiming, like Plaintiffs here, that "highway motorists were the persons intended to benefit from the contractually required insurance policy." Id. at 1379. In dismissing the claim, the court wrote that

> by failing to obtain the additional insurance required by the federal contract, TNT was the party who committed the breach and not the Postal Service. The most that can be said of the Postal Service is that it failed to enforce a contract provision that it was entitled to enforce—that is not a breach of contract by the Government. There are no provisions within the contract imposing a duty upon the Postal Service to ensure that TNT carries the proper insurance. Consequently, even if the [plaintiffs] were third party beneficiaries, there is no cause of action against the Government because the Government did not breach.

Id. at 1380-81 (citing Restatement (Second) of Contracts § 235(2)); see, e.g., Anchorage v. United States, 119 Fed. Cl. 709, 717 (Fed. Cl. 2015) ("[T]he Government's failure to enforce its contractual rights . . . cannot be the basis for a third party beneficiary claim" against it) (citing Sullivan); GM LLC v. Englewood Auto Grp., LLC, 2014 U.S. Dist. LEXIS 125735, at *12 (D.N.J. Sep. 9, 2014) (dismissing third-party beneficiary breach of contract claim based on unlawful brokered sales in part because "nothing in the Dealer Agreements imposes any duty or obligation on GM to prevent, or prohibits GM from permitting, brokered sales"). This reasoning and conclusion apply head-on here. Amazon was entitled — not required — to hold New Conception to its agreement to procure insurance. By not doing so, Amazon did not breach a promise to Plaintiffs (or anyone else). On reply, Plaintiffs simply rehash their arguments as to their third-party beneficiary status. But as made clear in Sullivan, this is a non sequitur: even if Plaintiffs were

11

third-party beneficiaries to the BSA, Amazon did not break a promise to them. Accordingly, this claim is futile, and Plaintiffs' motion to plead it must be denied.

## V.      Conclusion

An order consistent with this opinion follows.

Dated: October 29, 2021

<u>/s/ Cathy L. Waldor</u><br>
Cathy L. Waldor, U.S.M.J.